UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERT J. SLUDER,

    Plaintiff,

v.                                    Case No.  4:18-cv-284-RH/MJF

GERALD AMATUCCI, *et al.*,

    Defendants.

                                     /

**REPORT AND RECOMMENDATION**

This matter is before this court on Defendant Dr. Marcel Rohana's motion to dismiss Plaintiff's first amended complaint for failure to state a claim on which relief can be granted. (Doc. 68). Plaintiff filed a response. (Doc. 72). For the reasons set forth below, the undersigned recommends that Dr. Rohana's motion to dismiss be denied.[1]

**I.**     **Background**

Plaintiff Robert J. Sluder ("Sluder") alleges that, in 1998, he experienced a motor-vehicle accident and suffered a severe spinal-cord injury. (Doc. 4 ¶ 11). Due to this injury, Sluder suffers from ongoing: "tremors, fasciculations, difficulty

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Page 1 of 13

urinating, loss of manual dexterity and fine motor control in all extremities (right greater than left), reduced sensation, poor balance, musculoskeletal rigidity and episodes of painful muscle spasticity throughout his body." (*Id.* ¶ 12). Before he was incarcerated, Sluder's neurologist, spinal-injury specialist, and primary-care physician placed him on a regimen of medications, including Baclofen and Zanaflex, which reduced the residual symptoms of his spinal-cord injury. (*Id.* ¶ 13).

In July 2007, Sluder was arrested and later was convicted of a criminal offense. The Florida Department of Corrections ("FDC") took custody of Sluder and incarcerated him at the Zephyrhills Correctional Institution. Sluder informed his medical providers of painful spasticity, sleep disruption, and deterioration in his gait. (*Id.* ¶ 14). After reviewing Sluder's medical records, Dr. Torado initiated a Drug Exception Request for Baclofen.[2] (*Id.* ¶ 16). Prison medical personnel eventually provided Sluder Baclofen, but they provided a lower dosage of Baclofen than Sluder had received from his physicians before his incarceration. (*Id.*). Sluder contends that, as a result of this reduced dosage of Baclofen, his "function remained suboptimal in comparison to his pre-incarceration state." (*Id.*). Nevertheless, for eight years, the FDC provided Sluder 20 mg of Baclofen four times daily. (*Id.*).

---

[2] Sluder alleges that prison officials informed him that certain medications, such as Baclofen, require approval from the Regional Medical Director. This process requires the physician to initiate a Drug Exception Request, which must be approved and signed by the Regional Medical Director.

In April 2016, the FDC contracted with Centurion to provide medical treatment in its prisons. (*Id.* ¶ 17). On July 25, 2016, Sluder learned that his prescription for Baclofen had lapsed. (*Id.* ¶ 18). Medical staff informed Sluder of their intent to discontinue use of Baclofen because of its cost. (*Id.*). The medical staff indicated that the Centurion Medical Director made the decision not to prescribe Baclofen and that this decision was designed to reduce costs. (*Id.*). On July 27, 2016, Sluder filed a formal grievance relating to these events. (*Id.*). On August 17, 2016, Rhonda Davis—a Health Services Administrator—responded that Baclofen required approval from the Regional Medical Director. (*Id.* ¶¶ 19, 22). Dr. Amatucci eventually approved the Drug Exception Request for the Baclofen prescription, but Sluder asserts that this prescription reduced the Baclofen dosage from four times daily to three times daily.[3] (*Id.* at 19).

Sluder complained to his "primary treating physician,"—Defendant Dr. Rohana—that the reduced dosage of Baclofen resulted in "compromised sleep and caused increased spasticity and pain," but Dr. Rohana did not take action or "offer any reasonable alternative treatment to address Plaintiff's decline in functioning." (*Id.* ¶ 20). As a result of Dr. Rohana's purported "failure to offer adequate care," Sluder filed an informal grievance in which he noted his symptoms. (*Id.* ¶ 22).

---

[3] Sluder asserts that Dr. Amatucci was the Regional Director for Centurion in "region 3."

Rhonda Davis responded to the informal grievance by stating "that the decision to reduce the Baclofen dose had been reviewed by . . . Dr. Rohana" and that "the amount of medication prescribed is sufficient as it allows coverage for more than 6 hours." (*Id.* ¶ 22).

Sluder followed up with Dr. Rohana regarding his Baclofen dosage. (*Id.* ¶ 23). Dr. Rohana purportedly communicated to Sluder that the decision to reduce his dosage was part of "'a statewide change' rather than based upon Sluder's individual medical needs." (*Id.*).

On December 8, 2017, Dr. Rohana told Sluder that he intended to discontinue completely Sluder's treatment with Baclofen. (*Id.* ¶ 25). Sluder alleges that Dr. Rohana "made statements suggesting that the decision was initiated by someone supervisory to him and based upon cost." (*Id.*). Sluder asserts that Dr. Rohana did not offer a clinical reason for discontinuing Baclofen and did not offer any substitute for the Baclofen. (*Id.*).

Sluder filed a grievance regarding the decision to take him off Baclofen. Davis responded and confirmed the intent to "wean Plaintiff off remaining Baclofen" because "extended use of this medication has long lasting side effects that could cause you more harm to various organs." (*Id.* ¶ 26). Sluder asserts that Baclofen had never engendered side effects in him. He also asserts that no FDC-affiliated physician ever expressed concern relating to long-term usage of Baclofen.

(*Id.* ¶¶ 26-27). Sluder asserts that the medical staff temporarily prescribed ibuprofen as a substitute for Baclofen, but that the ibuprofen was discontinued because it could interact with the other medications Sluder was taking and could cause deleterious side effects. (*Id.* ¶ 26).

## II.   Standard

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In addressing a motion to dismiss, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient. *Id.* The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

### III.   Discussion

A.   **<u>Sluder Has Stated a Claim of Deliberate Indifference to a Medical Need</u>**

To state a claim for deliberate indifference to a serious medical need, in violation of the Eighth Amendment, a plaintiff must allege that:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007).

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013).

   **1.**   *Sluder Alleged More Than a Mere Medical Disagreement*

Dr. Rohana argues that Sluder alleged a mere disagreement with a medical decision made by his medical providers. (Doc. 68 at 8).

"[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Indeed, the Constitution does not "require that the medical care provided to prisoners be 'perfect, the best obtainable or even very good.'" *Keohane v. Fla. Dep't Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting *Harris*, 941 F.2d at 1510).

Accordingly, an allegation that an inmate did not receive his preferred treatment is insufficient to state an Eighth Amendment claim. *Keohane*, 952 F.3d at 1277. "The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of [a reviewing] court to second guess medical judgments or to require that [prison officials] adopt the more compassionate of two adequate options." *Id.* (quoting *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc)); *Harris*, 941 F.2d at 1505; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that when an inmate receives medical treatment but desires a different mode of treatment, the care provided does not amount to deliberate indifference).

Sluder's amended complaint includes plausible allegations that Dr. Rohana's decision to reduce Sluder's dosage of Baclofen—and eventually to discontinue his

receipt of the drug—was based on non-medical reasons. Specifically, Sluder alleges, at least four times, that the Centurion Medical Director directed medical providers to cease prescribing Baclofen due to its expense. (Doc. 4 ¶¶ 16, 18, 23, 25). Additionally, Sluder alleges that Dr. Rohana informed him that this was a result of "statewide change," rather than a medical assessment of Sluder's medical needs. (*Id.* ¶¶ 23, 25). Sluder also asserts that Dr. Rohana did not offer a clinical reason for discontinuing Baclofen and offered only ibuprofen as a substitute. (*Id.*).

True, Sluder asserts that a prison official—a non-practitioner Health Services Administrator—*claimed* that the Baclofen was discontinued to prevent deleterious side effects. But Sluder did not allege that this was the true reason for Dr. Rohana's decision not to prescribe Baclofen. Indeed, Sluder alleges that this was a mere pretext. As the district court previously noted:

> The amended complaint alleges the reason for the failure to provide appropriate treatment is cost, not a difference in medical judgment. The amended complaint alleges that an official has offered an excuse: that long-term treatment with the medication Mr. Sluder was prescribed outside the institution and took successfully for eight years is not appropriate because of possible side effects. But the amended complaint alleges that this is incorrect . . . .

(Doc. 30 at 2-3).

Sluder, therefore, clearly has alleged more than simply a difference of medical opinion regarding a preferred course of treatment.

## 2. *Sluder Alleged More than Mere Negligence*

Dr. Rohana next argues that, to the extent Sluder asserts that Dr. Rohana's negligence caused him harm, mere negligence does not amount to deliberate indifference. (Doc. 68 at 8).

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)); *see also Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (defining deliberate indifference as conduct that is reckless or that evinces a knowing, conscious disregard). "An official disregards a serious risk by more than mere negligence 'when he or she knows that an inmate is in serious need of medical care, but he or she fails or refuses to obtain [or intentionally delays] medical treatment for the inmate.'" *Nam Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citations omitted).

As discussed above, Sluder's amended complaint alleges more than mere negligence. He asserts that Dr. Rohana's decision to reduce—and later eliminate—Sluder's prescribed dosage of Baclofen was based on a desire to reduce expenses. Specifically, in his complaint Sluder alleges:

- Centurion's "Medical Director" made the decision to "not use Baclofen due to its expense." (Doc. 4 ¶ 18).

- Later, Dr. Rohana told Sluder that the decision to discontinue treating Sluder with Baclofen was made by someone superior to Dr. Rohana. (*Id.* ¶ 25).

- Dr. Rohana did not "offer a clinically relevant reason" for the discontinuation of Baclofen, and he failed to "offer an alternative therapy." (*Id.*).

- Sluder was prescribed ibuprofen as an alternative, but this prescription was terminated due to the possibility of the interaction between ibuprofen and Sluder's other medications. (*Id.* ¶ 26).

- Sluder has not received an alternative treatment and continues to suffer from Dr. Rohana's failure to prescribe Baclofen at the required dosage. (*Id.* ¶ 28).

Taking these statements as true, Sluder has sufficiently alleged that Dr. Rohana's decision to reduce, and later discontinue altogether, Sluder's prescription for Baclofen was intentional and not a result of mere negligence.

B.      **<u>Sluder Alleged That He Suffered More Than a *De Minimis* Injury</u>**

Finally, Dr. Rohana argues that Sluder should be precluded from recovering compensatory and punitive damages because he has not alleged that he suffered a physical injury. (Doc. 68 at 11-12).[4]

Under the Prison Litigation Reform Act, no "Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or commission of sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Thus, a plaintiff cannot recover compensatory or punitive damages without an allegation of specific physical injury.[5] *Brooks v. Warden*, 800 F.3d 1295, 1303 (11th Cir. 2015) (citing *Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) (addressing punitive damages), and *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) (addressing compensatory damages), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part en banc*, 216 F.3d 970). Although, the statute does not define "physical

---

[4] Initially Dr. Rohana asserted the defenses of Eleventh-Amendment immunity and qualified immunity. (Doc. 68 at 1). He subsequently withdrew these assertions, however. (Docs. 100, 107).

[5] Under the PLRA, absent a claim of physical injury, a case may result only in nominal damages. *Brooks v. Warden*, 800 F.3d 1303, 1308 (11th Cir. 2015).

injury," the Eleventh Circuit requires that the plaintiff allege a physical injury that is more than *de minimis*. *See Harris*, 190 F.3d at 1286-87.

There is "no consensus for how to determine when a physical injury is 'greater than de minimis.'" *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020). But an injury certainly would be *de minimis* if it entailed only "a routine discomfort associated with confinement." *Id.* (discussing *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003); *Harris*, 190 F.3d at 1287).

Here, Sluder alleges that he suffered more than a *de minimis* physical injury. (Doc. 4 at 12). Sluder asserts, for example, that he suffered from insomnia, muscle spasms, joint stiffness, dragging of feet, difficulty urinating, loss of manual dexterity and fine motor control in both hands, poor balance, and pain. In isolation or of a fleeting nature, some of these hardships would be *de minimis*. In light of their alleged amalgamation and extended duration, however, these maladies could amount to more than the "routine discomfort" typically associated with mere confinement. Sluder, therefore, has sufficiently alleged more than a *de minimis* physical injury. Accordingly, Dr. Rohana's motion to dismiss with respect to claims for compensatory and punitive damages also should be denied.

### IV.     Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Defendant Dr. Rohana's motion to dismiss (Doc. 68) be **DENIED**.

At Panama City Beach, Florida, this 1st day of October, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**